UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL DORIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMUNITY LOAN SERVICING, LLC,<br><br>    Defendant. | Case No. 22-cv-04372-DMR<br><br>**ORDER ON MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 22 |

    Defendant Community Loan Servicing, LLC fka Bayview Loan Servicing moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Paul Dorian's first amended complaint ("FAC"). [Docket No. 22.] This motion is appropriate for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

**I.    BACKGROUND**

    Dorian makes the following allegations in the FAC, all of which are taken as true for purposes of the motion to dismiss.[1] Dorian is resident of San Francisco, California and is a "consumer" within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. In January 2020, he began receiving letters from Defendant informing him that he "owed over $34,000 on his escrow account." [Docket No. 19 (FAC) ¶¶ 2, 5.] He contacted Defendant and learned that the $34,000 at issue was for property taxes that Defendant had paid on two of Dorian's properties located in San Francisco and Tracy, California. Dorian alleges that Defendant never had "any connections to either of these properties" and therefore "should never have paid the property taxes for these properties out of" his escrow account. *Id*. at ¶¶ 6, 7. Accordingly,

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Dorian refused to pay Defendant the $34,000 on the ground that it "should not have paid the property taxes for these properties in the first place." He alleges that as a result of his refusal to pay, Defendant removed Dorian's ability to make online or automatic payments on other loans he owed Defendant. The only way Dorian could make payments on his loans was by calling Defendant to schedule a meeting with an individual employee via an automated system, and then calling back at the scheduled time to process the payment over the phone. In many instances, Defendant's employees do not join the scheduled meeting at the appointed time. *Id*. at ¶¶ 8-11. As a result, Dorian "has been unable to timely make payments for some of his loans because Defendant refused to accept or make it possible to pay." *Id*. at ¶ 12.

In March 2021, Defendant began reporting on Dorian's credit report that he was 120 days late on payment for a loan for a third property in Riviera Beach, Florida. Defendant reported Dorian as late on payments in June and July 2021 and that he owed a balance of over $12,000 as of July 2021. Dorian alleges that these reports, and the amount he allegedly owes, are inaccurate because he made timely payments on his obligations on the mortgage. He further alleges that "the amounts sought by Defendant were unilaterally imposed by Defendant based on its mispayment of escrow taxes" on the unrelated properties in San Francisco and Tracy. *Id*. at ¶¶ 13, 14.

Dorian alleges that Defendant furnished inaccurate and false information to all three credit reporting agencies ("CRAs") relating to his account and payment status for at least March 2021, June 2021, and July 2021, which has had "a significant negative effect" on his credit score. *Id*. at ¶ 15. He "sent Defendant a letter requesting a removal of the reporting," but "Defendant has not corrected the wrong reporting on his Account at this time." Dorian submitted a written dispute to all three CRAs in July 2021 disputing the validity of Defendant's reporting. After receiving the disputes from the CRAs, Defendant responded "by verifying the inaccurate reporting as accurate." It remains on Dorian's credit report. *Id*. at ¶¶ 16-17.

Dorian alleges that "Defendant failed to conduct a reasonable reinvestigation into the reporting because Defendant knew that its reporting was inaccurate and would have been able to confirm that its reporting was inaccurate had it consulted its account records and the disputes sent by [Dorian]." He further alleges that Defendant "failed to correct the erroneous reporting in a

timely manner," and instead continued to report "incorrect derogatory information" about Dorian to the CRAs. *Id*. at ¶ 18.

As a result of Defendant's inaccurate reporting, Dorian's credit score decreased. He alleges that he "was and/or will be denied future loans" due to the reporting. He further alleges that at the time of the inaccurate reporting, he was attempting to refinance loans for seven properties. He was unable to refinance several of the properties; for some, he refinanced them at a higher interest rate than he would have received had Defendant not inaccurately reported his accounts. Given the higher interest rates he is paying, he has suffered damages of over $450,000. *Id*. at ¶¶ 20-22.

Dorian filed the complaint against Defendant in San Francisco Superior Court on June 8, 2022. Defendant removed the action to this court on July 28, 2022. [Docket No. 1.] Dorian filed the FAC on August 17, 2022, alleging the following claims: 1) violation of the FCRA, 15 U.S.C. § 1681s-2(b); 2) violation of the California Consumer Credit Reporting Agencies Act ("CCCRA"), California Civil Code section 1785.25; 3) violation of the Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), California Civil Code section 1788.17; 4) breach of contract; and 5) violation of California's UCL, California Business and Professions Code section 17200 et seq., based on the unlawful and fraudulent prongs.

Defendant now moves to dismiss.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III.  REQUEST FOR JUDICIAL NOTICE[2]

Defendant asks the court to take judicial notice of three documents: the original complaint filed in this action; the FAC; and a mortgage recorded on October 29, 2018 as instrument no. 20180383194 in Palm Beach County, Florida.  [Docket No. 22-2 (Request for Judicial Notice, "RJN") Exs. 1-3.]  The request is denied as moot as to Exhibits 1 and 2, as these filings are part of the court's docket and are already part of the record in this case.  [*See* Docket Nos. 1 (Notice of Removal Ex. A), 19.]

Exhibit 3, the mortgage recorded in Florida, is judicially noticeable because the document

---

[2] Defendant also submitted a declaration by counsel in support of the motion to dismiss.  [Docket No. 22-1 (Thomas Decl. Aug. 31, 2022).]  It offers no authority that the court may consider this evidence in connection with this motion.  *See Lee*, 250 F.3d at 688 ("when the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint." (cleaned up)).

is a matter of public record. It is a true and correct copy of an official public record of the Palm Beach County Office of the Clerk and Comptroller, and its authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). Dorian objects that the "request is improper," but does not set forth the basis for his objection. *See* Opp'n 8 n.4. Accordingly, the objection is overruled.

## IV.     DISCUSSION

### A.     FCRA Claim

Dorian's first claim for relief is for violation of the FCRA, 15 U.S.C. § 1681s-2(b). Congress enacted the FCRA in 1970 to regulate credit reporting agencies ("CRAs") and furnishers of information to CRAs in order to ensure fair and accurate credit reporting regarding consumers. *See* 15 U.S.C. § 1681. Section 1681s-2(a) of the FCRA outlines the duties of furnishers of consumer information to maintain and report accurate information and notice of disputes. 15 U.S.C. § 1681s-2(a)(1)-(3).

The relevant provision of the FCRA, 15 U.S.C. § 1681s-2(b), imposes four duties on furnishers once they have received notice of a dispute from a CRA: (1) conduct an investigation, (2) review all relevant information received from CRA, (3) report any inaccuracies found, (4) modify or delete any incorrect information. 15 U.S.C. § 1681s-2(b)(1)(A)-(E). This subsection is privately enforceable but the duties within it are "triggered only after the consumer notifies the CRA, and the CRA then notifies the furnisher of credit." *Nelson v. Equifax Info. Servs.,* LLC, 522 F. Supp. 2d 1222, 1231 (C.D. Cal. 2007) (citing *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)). "[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under [§ 1681s-2(b)]." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). Assuming a CRA does notify the furnisher of a dispute, a "plaintiff filing suit under section 1681i must make a 'prima facie showing'" that the report in dispute was inaccurate. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (citing *Dennis v. BEH-1, LLC*, 520 F3d 1066, 1069 (9th Cir. 2008)). Then the plaintiff must show that the defendant's investigation procedures were not reasonable. *See Gorman*, 584 F.3d at 1157. The FCRA provides for civil liability for willful and negligent noncompliance. 15 U.S.C.

§§ 1681n, 1681o.

The FAC alleges that Defendant "failed to conduct a reasonable reinvestigation" of the information it furnished to CRAs, resulting in inaccurate information being included in Dorian's credit report. FAC ¶¶ 18-20. Dorian alleges that as a result, his credit score decreased and he was denied the opportunity to refinance seven properties at favorable rates, leading to damages of over $450,000.00, emotional distress, and out-of-pocket expenses. *Id*. at ¶¶ 22, 25. He alleges the violation was both negligent and willful. *Id*. at ¶ 28.

Defendant moves to dismiss the FCRA claim on the grounds that Dorian's alleged damages are not "causally linked to his consumer capacity because his damages result from his attempts to refinance seven properties in a commercial or business capacity." Mot. 4. Specifically, Defendant argues that the credit reports that resulted from the allegedly inaccurate information Defendant furnished to the CRAs and damaged Dorian were not "consumer credit reports." Mot. 4. Therefore, it argues, Dorian has not stated a claim under the FCRA.

"While the FCRA expressly provides for 'actual damages' for a negligent or willful violation, [15 U.S.C.] §§ 1681n and 1681o also expressly provide that a violator is liable 'to that consumer.'" *Boydstun v. U.S. Bank*, 726 F. App'x 601 (9th Cir. 2018) (quoting *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1122 (D. Nev. 2008)). In other words, a plaintiff seeking damages for an FCRA violation must show that the defendant's violation "resulted in damages to [the] [p]laintiff *as a consumer*." *Id*. (emphasis in original) (quoting *Johnson*, 558 F. Supp. 2d at 1122). The FCRA defines "consumer" to mean "an individual," 15 U.S.C. § 1681a(c), and defines "consumer report" to mean

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>
> **(A)** credit or insurance to be used primarily for personal, family, or household purposes;
>
> **(B)** employment purposes; or
>
> **(C)** any other purpose authorized under section 1681b of this title.

6

15 U.S.C.A. § 1681a(d)(1). Courts that have considered the question have concluded that the FCRA does not apply where a consumer report is used to obtain credit for business purposes, as opposed to personal purposes. *See Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1081-83 (C.D. Cal. 2014) (collecting cases; granting summary judgment on FCRA claim where plaintiff's "claimed damages flow[ed] from [the plaintiff's] inability to supply credit to [his] real estate investment business"); *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (holding that "[r]eports used for 'business, commercial, or professional purposes' [were] not within the purview of" an earlier version of the FCRA).

According to Defendant, Dorian could not have been "living on seven properties simultaneously," and therefore the properties must have been "secured for investment purposes" and are used "for a business or commercial purpose." Mot. 5. Since his "damages result from his attempts to refinance seven properties in a commercial or business capacity . . . [t]he credit reports relied upon to deny [him] his alleged refinancing opportunities at favorable rates were not consumer reports under the FCRA"; therefore, his damages are not covered by the FCRA. *Id*. at 4.

In response, Dorian notes the allegations in the FAC that he is a "consumer" and that the credit reports at issue are "consumer reports" under 15 U.S.C. § 1681a(d), *see* FAC ¶¶ 2, 4, and argues that he "has adequately pled that the harm he is suffering is from consumer reports that qualify under FCRA." Opp'n 7-8. Essentially, Dorian argues that these allegations must be accepted as true for purposes of this motion, and that whether he will ultimately be able to prove that the reports fall under the FCRA presents a question of fact that is not appropriate for resolution on a motion to dismiss. However, the FAC's allegations that the credit reports at issue are "consumer reports" under the meaning of the FCRA are entirely conclusory. The FAC does not allege any facts relating to the purpose for which the credit reports were used; specifically, there are no allegations that the reports that allegedly damaged Dorian were to be used to establish his eligibility for "credit or insurance to be used primarily for personal, family, or household purposes," "employment purposes," or any other purpose authorized under the FCRA. *See* 15 U.S.C. § 1681a(d)(1). Nor does the FAC allege any facts supporting a plausible inference that the reports are "consumer reports" within the meaning of the statute. Accordingly, the FAC fails to

plead that the credit reports at issue qualify as consumer reports under the FCRA and that Dorian suffered harm as a result of inaccurate information in consumer reports. As Dorian may be able to cure this deficiency through amendment, the court dismisses the FCRA claim with leave to amend.

### B.     CCCRA Claim

Dorian's second claim for relief is violation of California Civil Code section 1785.25(a), which prohibits a person from "furnish[ing] information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

As with the FCRA, damages are available to "[a]ny *consumer* who suffers damages as a result of a violation" of the CCCRA. *See* Cal. Civ. Code § 1785.31(a) (emphasis added). "[B]ecause the CCRAA is substantially based on the Federal Fair Credit Reporting Act, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 889 (9th Cir. 2010) (citation and quotation marks omitted).

Defendant moves to dismiss this claim on the same ground as the FCRA claim; namely, that Dorian's credit reports were not "consumer reports" under the CCCRA. Mot. 5-6. *See Grigoryan*, 84 F. Supp. 3d at 1081 ("the FCRA and CCRAA do not apply where a consumer report is used for business purposes."). For the reasons discussed above, the FAC does not sufficiently allege facts that would support a plausible inference that the reports at issue were "consumer reports" under the FCRA, and by extension, the CCCRA. This claim is dismissed with leave to amend.

### C.     Rosenthal Act Claim

Dorian's third claim is for violation of the Rosenthal Act, California Civil Code section 1788.17. The Rosenthal Act is a state version of the federal Fair Debt Collection Practices Act ("FDCPA"), *see Riggs v. Prober & Raphael,* 681 F.3d 1097, 1100 (9th Cir. 2012), and requires "every debt collector collecting or attempting to collect a consumer debt" to comply with the substantive provisions of the FDCPA. Cal. Civ. Code § 1788.17. Under the Rosenthal Act, the

term "consumer debt" means "money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction," and "includes a mortgage debt." Cal. Civ. Code § 1788.2(f). A "'consumer credit transaction' means a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e).

Dorian alleges Defendant violated the Rosenthal Act by "[f]alsely representing the character, amount, or legal status of" his debt and by "[c]ollecting an amount from [him] that is not expressly authorized by the agreement creating the debt . . . ." FAC ¶ 29. Defendant argues that this claim must be dismissed because "the loan at issue for the Riviera Beach Property was not a consumer credit transaction under Section 1788.17" and was instead connected to an investment property for business and commercial purposes. Since the loan was not initiated "for personal, family, or household purposes," Defendant argues, its actions do not fall under the Rosenthal Act. Mot. 6-7.

In response, Dorian argues that the FAC alleges that Defendant attempted to collect a debt from him that "qualifies as a 'consumer debt,' as defined by" the Rosenthal Act, and notes that the statute provides that mortgage debt is "consumer debt." Opp'n 9 (citing FAC ¶ 3). As with Dorian's FCRA and CCCRA claims, the allegation that the debt in question is a "consumer debt" withing the meaning of the Rosenthal Act is entirely conclusory, and the FAC fails to allege any facts about the nature of the debt or facts supporting a plausible inference that the mortgage on the Riviera Beach Property was incurred primarily for personal, family, or household purposes. *See, e.g., Gilliam , Tr. of Lou Easter Ross Revocable Tr. v. Levine , Tr. of Joel Sherman Revocable Tr.*, 955 F.3d 1117, 1119, 1123 (9th Cir. 2020) (holding that plaintiff, a trustee, had sufficiently alleged that loan to make repairs to a personal residence occupied by her niece, the trust beneficiary, was "obtained for a consumer purpose" under the Rosenthal Act because she alleged she "obtained this loan for a personal, household, or familial purpose—to enable her niece, the trust beneficiary, to continue to live in the trust property."); *see also Norton v. LVNV Funding, LLC*, 396 F. Supp. 3d 901, 911 (N.D. Cal. 2019) (holding that "[a]lthough [the plaintiff's]

9

1    allegations do not nail down the existence of a consumer debt, they create a plausible inference
2    that the debt was incurred for personal, family, or household expenses, and therefore are sufficient
3    to withstand a Rule 12 challenge" where plaintiff lacked "concrete information about the debt" at
4    issue). Accordingly, Dorian's Rosenthal Act claim is dismissed with leave to amend.

### D. Breach of Contract

Claim four is for breach of contract. Dorian alleges that he and Defendant "entered into a contract by which Defendant would provide a mortgage for the Property [in Riviera Beach] in exchange for ongoing payments, including interests and fees." FAC ¶¶ 13, 45. Dorian alleges that he "made payments to Defendant according to the mortgage and thus complied with the contract," and that Defendant breached the contract as follows: "Defendant failed to perform under the contract by charging [Dorian] for payments made by Defendant on taxes unrelated to the Property and not authorizes by the mortgage, and thereafter seeking to collect said money from Plaintiff, including by reporting inaccurate credit information about Plaintiff." *Id*. at ¶ 47. He further alleges that he has been harmed by the breach "because he has had negative credit information reported about him and Defendant has sought to collect amounts that are not owed under the mortgage." *Id*. at ¶ 48.

Defendant moves to dismiss this claim on two grounds: 1) that the FAC does not adequately allege the terms or "legal effect" of the contract; and 2) the FAC alleges that the contract at issue is the mortgage for the Riviera Beach property and that Defendant breached the agreement in part by reporting inaccurate credit information about Dorian, but the mortgage "is silent on responsibilities related to the furnishing of credit to CRAs," citing RJN Ex. 3. Mot. 7-8.

The elements of a claim for breach of contract under California law are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). "To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (quoting *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989)); *accord McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457,

1489 (2006) ("A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect." (citation omitted)). "A plaintiff fails to sufficiently plead the terms of the contract if he does not allege in the complaint the terms of the contract or attach a copy of the contract to the complaint." *Langan*, 69 F. Supp. 3d at 979 (citing *Twaite*, 216 Cal. App. 3d at 252). Although "it is unnecessary for a plaintiff to allege the terms of the alleged contract with precision, the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." *Id*. (citing *James River Ins. Co. v. DCMI, Inc.*, No. C 11-06345 WHA, 2012 WL 2873763, at *3 (N.D. Cal. July 12, 2012) (discussing sufficiency of breach of contract claim under the notice pleading requirements of FRCP 8 rather than under California pleading requirements).

Here, the FAC does not meet this standard as it does not plead the material terms of the specific contract at issue or allege which particular obligations Defendant breached. *See Langan*, 69 F. Supp. 3d at 979-80 (dismissing breach of contract claim "because there is no way for the Court know even generally what the terms of the contract or contracts were," among other defects; "[t]o plead a claim for breach of contract, Plaintiff must at least allege the material terms of a specific contract, state that he performed his own obligations under that contract or was excused from performing them, and state which obligations a defendant allegedly breached."). Moreover, Defendant contends that the contract at issue is the mortgage attached as Exhibit 3 to the RJN and that the mortgage is silent as to Defendant's credit reporting allegations. Mot. 8. Even though Dorian does not dispute that Exhibit 3 is the contract at issue, he does not identify any particular provisions in the mortgage that Defendant allegedly breached. *See* Opp'n 10-11. Accordingly, Dorian's breach of contract claim is dismissed with leave to amend.[3]

### E.  UCL Claim

Dorian's fifth claim for relief is violation of the UCL based on its unlawful and fraudulent

---

[3] Because the court dismisses Dorian's Rosenthal Act and breach of contract claims under Rule 12(b)(6), it does not reach Defendant's challenge to those claims based on Federal Rule of Civil Procedure 9(b). *See* Mot. 8-10.

11

1   prongs.  Defendant moves to dismiss the claim in its entirety.

2          Under Section 17200, unfair competition is defined as "any unlawful, unfair or fraudulent
3   business act or practice" and "unfair, deceptive, untrue or misleading advertising."  *See* Cal. Bus.
4   & Prof. Code § 17200.  A business practice is "unlawful" under section 17200 if it violates an
5   underlying state or federal statute or common law.  *See Cal-Tech Commc'ns, Inc. v. Los Angeles*
6   *Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Dorian's UCL claim challenging unlawful
7   business practices is based on the alleged violations of the Rosenthal Act and the CCRAA.  *See*
8   FAC ¶ 52.  Defendant argues that this claim is derivative of the second and third claims for relief
9   and must be dismissed because Dorian has not stated claims under those statutes.  Mot. 10.
10  Dorian does not dispute that his UCL claim based on the unlawful prong rises and falls with the
11  underlying statutory claims.  *See* Opp'n 13 n.6.  As discussed above, the court concludes that the
12  FAC does not state a claim under either the Rosenthal Act or the CCRAA.  Accordingly, the UCL
13  claim based on the unlawful prong is dismissed with leave to amend.

14         The UCL claim based on fraudulent business acts or practices rests on the allegations that
15  Dorian "agreed to a mortgage with Defendant under the basic assumption that Defendant would
16  only charge for amounts agreed to under the mortgage and not arbitrarily pay and then charge
17  [Dorian] for unrelated taxes."  FAC ¶ 56.  Dorian alleges that "[t]he mortgage explicitly set forth
18  the amounts that would be charged under the mortgage," and that his "reliance upon Defendant's
19  deceptive statements in the mortgage is reasonable due to the unequal bargaining powers of
20  Defendant and [Dorian," and that "it is likely that Defendant's fraudulent business practice would
21  deceive other members of the public."  *Id*.

22         "A plaintiff may bring a claim under the fraudulent prong of the UCL if the defendant's
23  conduct is 'likely to deceive.'"  *Langan*, 69 F. Supp. 3d at 984 (quoting *Newsom v. Countrywide*
24  *Home Loans, Inc*., 714 F. Supp. 2d 1000, 1012 (N.D. Cal. 2010) (citations omitted)).  "To state a
25  claim for fraud under the UCL, a plaintiff must allege the existence of (1) a duty to disclose, and
26  (2) reliance," and must satisfy the heightened pleading requirements of Rule 9(b).  *Id*. (citations
27  omitted).  The FAC fails to satisfy this standard as it does not allege a duty to disclose.  "Absent a
28  duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the

1 UCL." *Newsom*, 714 F. Supp. 2d at 1012. Additionally, the FAC does not allege the specifics of
2 the alleged "deceptive statements in the mortgage" as required by Rule 9(b). Accordingly, this
3 claim is dismissed with leave to amend.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Dorian shall file a second amended complaint in accordance with this order within 14 days of the date of the order and shall **plead his best case.**

**IT IS SO ORDERED.**

Dated: October 13, 2022



Donna M. Ryu
United States Magistrate Judge

13