Todd M. Friedman (216752)
Adrian R. Bacon (2803332)
Law Offices of Todd M. Friedman, P.C.
21031 Ventura Blvd, Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| PAUL DORIAN, <br><br> PLAINTIFF, <br><br> -vs- <br><br> COMMUNITY LOAN SERVICING, LLC d/b/a BAYVIEW LOAN SERVICING; and DOES 1 through 10, inclusive; <br><br> Defendants. | CASE NO.: 4:22-cv-04372-DMR <br><br> SECOND AMENDED COMPLAINT <br><br> 1. Violation of the Fair Credit Reporting Act <br> 2. Violation of California Consumer Credit Reporting Agencies Act <br> 3. Libel <br> 4. Negligence <br> 5. Breach of Fiduciary Duty <br><br> (Amount to Exceed $25,000) |

## I. INTRODUCTION

1. This is an action for damages brought by an individual for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 (hereinafter "FCRA") and the California Consumer Credit Reporting Agencies Act, California Civil Code § 1785.25 (a) (hereinafter "CCRA"), both of which

1

SECOND AMENDED COMPLAINT

regulate the collection, dissemination, and use of consumer information, including consumer credit information. Plaintiff further alleges that Defendant defamed him by transmitting false and injurious statements regarding Plaintiff's credit worthiness to third parties, was intentionally negligent, and breached its fiduciary duty to Plaintiff.

## II. PARTIES

2.  Plaintiff, PAUL DORIAN ("Plaintiff"), is a natural person and individual residing in San Francisco County and is a "consumer" as defined by 15 U.S.C. § 1681a(c) and Cal. Civ. C. § 1785.3(b).

3.  At all relevant times herein, Defendant COMMUNITY LOAN SERVICING, LLC (hereinafter "Defendant") regularly provided information to consumer reporting agencies and is therefore an "information furnisher" as defined by the FCRA and CCRA. At all relevant times, Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

## III. FACTUAL ALLEGATIONS

4.  In or around January of 2020, Plaintiff began receiving letters from Defendant informing him he owed over $34,000 on his escrow account for his property located at 3640 Avenue J Apt. 1, Riviera Beach, FL 33404 ("Ave. J Property").

5.  After contacting Defendant, Plaintiff discovered that this $34,000 was for property taxes that Defendant had paid on two of Plaintiff's properties at addresses 230-232 Prospect Ave. San Francisco, CA 94110 ("Prospect Ave. Properties") and 1645 Parkside Dr., Tracy, CA 95376 ("Parkside Dr. Property").

6.  The Ave. J Property has no connection to either of the Prospect Ave. Properties or the Parkside Dr. Property and as such Defendant should never have paid the property taxes for these properties out of Plaintiff's escrow account on the Ave. J Property.

7.  Plaintiff refused to pay Defendant the $34,000 because Defendant should not have paid the property taxes for the Prospect Ave. Properties or the

Parkside Dr. Property from his Ave. J Property escrow account. The mortgage for the Ave. J Property similarly does not provide that Defendant may pay property taxes for other properties out of the Ave. J Property escrow account.

8. As a result, Defendant removed Plaintiff's ability to make online or automatic payments on other loans he owed to Defendant.

9. In fact, the only way Plaintiff was able to make payments on his loans to Defendant was by calling one of Defendant's employees assigned to Plaintiff's account, scheduling a meeting with that employee through Defendant's automated system, and then call back at the scheduled time so that Defendant's employee can process the payment over the phone.

10. In many instances, Defendant's employee did not join the meeting at the schedule time.

11. As a result, Plaintiff has been unable to timely make payments for some of his loans because Defendant refused to accept or make it possible to pay.

12. In or around March of 2021, Defendant began reporting on Plaintiff's credit report that he was 120 days late on a payment for his loan on the Ave. J. Property.

13. Defendant additionally reported Plaintiff as 180 days late in June 2021 and 150 days late in July 2021 and as owing a balance of over $12,362 as of July 2021 on Plaintiff's credit report with respect to the Ave. J Property. This reporting and the amount sought by Defendant are both inaccurate because Plaintiff made timely payments on his actual obligations under his mortgage on the Ave. J Property and the amounts sought by Defendant were unilaterally imposed by Defendant based on its negligent misapplication of escrow taxes to unrelated properties.

14. Defendant furnished inaccurate and false information to all three credit reporting agencies, Equifax, Transunion, and Experian ("CRAs"), relating to Plaintiff's account on the Ave. J. Property and its payment status for, at a

minimum, March 2021, June 2021, and July 2021. This has resulted in a significant negative effect on Plaintiff's credit score.

15.  Plaintiff owns the Ave. J Property in his own name and as an individual, not as a corporation or other entity. As such, when Defendant has reported this inaccurate, derogatory information against Plaintiff to the CRAs, it has done so on Plaintiff's individual and personal credit report.

16.  On or around March 23, 2021, Plaintiff sent Defendant a letter requesting a removal of the reporting from the credit agencies. Defendant did not correct the wrong reporting on his Account until after this lawsuit was filed.

17.  On or about July 13, 2021, Plaintiff submitted a written dispute to all three CRAs disputing the validity of the reporting furnished by Defendant. The CRAs forwarded these written disputes to Defendant who responded to the disputes by verifying the inaccurate reporting as accurate, causing it to remain on Plaintiff's credit report. In doing so, Defendant re-stated the inaccurate, derogatory reporting concerning the March 2021, June 2021, and July 2021 "payments" on the Ave. J Property to third parties, namely the CRAs.

18.  By verifying the inaccurate reporting as accurate, Defendant failed to conduct a reasonable reinvestigation into the reporting because Defendant knew that its reporting was inaccurate and would have been able to confirm that its reporting was inaccurate had it consulted its account records and the disputes sent by Plaintiff. Defendant failed to correct the erroneous reporting in a timely manner and instead continued to report incorrect derogatory information to the CRAs.

19.  Defendant is aware that the CRAs to which they are providing this information are going to disseminate this information to various other persons or parties who will be reviewing this information for the purpose of extending credit, insurance or employment and that they have already done so.

20.  As a result of Defendant's inaccurate reporting of Plaintiff's accounts, Plaintiff's credit score decreased, and Plaintiff has been denied loans due to the

derogatory items regarding the Ave. J Property placed by Defendant on Plaintiff's personal credit report.

21. Plaintiff owns seven properties in his own name and as an individual, not as a corporation or other entity.

22. In Florida, Plaintiff owns five properties, consisting of the Ave. J Property, 1052 Dr. Martin Luther King Jr. Blvd, Riviera Beach, Florida 33404 ("MLK Blvd. Property"), 1058 W. 7th St., Riviera Beach, Florida 33404 ("7th St. Property"), 7891-7893 Loomis St., Lantana, Florida 33462 ("7891 Loomis Property"), and 7905-7907 Loomis St., Lantana, Florida 33462 ("7905 Loomis Property"). All of these five properties are owned in his own name and as an individual. Plaintiff rents out these five properties to tenants and collects rent from those tenants to support his personal income. These five properties are held as personal investments, similar to a stock portfolio or other investment account, on which Plaintiff collects personal income. Plaintiff does not reside at any of these five properties.

23. Additionally, in California, during the relevant time, Plaintiff owned three properties, the Prospect Ave. Properties, the Parkside Dr. Property, and 998 Burnett Ave., San Francisco, CA 94131 ("Burnett Ave. Property"). All of these three properties were owned in his own name and as an individual.

24. Plaintiff personally resides at the Burnett Ave. Property with his husband. It is his primary residence.

25. Plaintiff's in-laws reside at the Parkside Dr. Property and thus it is used for family purposes, as his in-laws are part of his family. Plaintiff's in-laws still pay rent to Plaintiff on the Parkside Dr. Property.

26. The Prospect Ave. Properties were rented out to tenants and Plaintiff collected rent from those tenants to support his personal income. Plaintiff has since ultimately sold the Prospect Ave. Properties in 2022.

27. At the time of Defendant's inaccurate reporting, Plaintiff was attempting to refinance loans for these eight properties. As a result of Defendant's

inaccurate reporting and Plaintiff's decreased credit score, Plaintiff was unable to refinance these properties at the prevailing market rates which he would have been able to had Defendant not inaccurately reported Plaintiff's accounts.

28.     In particular, Plaintiff attempted to refinance his primary home at the Burnett Ave. Property in September 2021 from a 3.75% rate to a 2.750% on a 7/1 adjustable-rate mortgage. When Plaintiff applied for a refinance in September 2021 through his lender of choice, US Bank, US Bank obtained a written credit report from the CRAs concerning Plaintiff's credit worthiness and standing as an individual. This report was collected to be used for an extension of credit to Plaintiff for personal, family, or household purposes, as it was to be used to refinance his primary residence. On the written credit report US Bank obtained, Defendant was falsely reporting that Plaintiff was delinquent on his March 2021, June 2021, and July 2021 "payments" on the Ave. J Property. Because of this false reporting by Defendant, Plaintiff was unable to refinance this mortgage at the 2.750% rate, ultimately refinancing it at 3.5% after Defendant finally removed the derogatory reporting on or about June 2022.

29.     Plaintiff attempted to refinance the home his in-laws resided at the Parkside Dr. Property in March and April 2021 from a 4.25% rate to a 3.375% on a 30-year fixed mortgage. When Plaintiff applied for a refinance in March and April 2021 through his lender of choice, US Bank, US Bank obtained two written credit reports from the CRAs concerning Plaintiff's credit worthiness and standing as an individual. These reports were collected to be used for an extension of credit to Plaintiff for personal, family, or household purposes, as they were to be used to refinance the residence his in-laws resided at. On the written credit reports US Bank obtained, Defendant was falsely reporting that Plaintiff was delinquent on his March 2021 "payment" on the Ave. J Property. Because of this false reporting by Defendant, Plaintiff was unable to refinance this mortgage at the 3.375% rate or at any better rate, including after Defendant finally removed the derogatory reporting on or about June 2022.

SECOND AMENDED COMPLAINT

30.     Plaintiff attempted to refinance his properties in Florida that he used for personal, rental income in March and April 2021. The Ave. J Property, MLK Blvd. Property, and 7th St. Property were to be refinanced from 5.875% to 3.375% on a 30-year fixed mortgage. The 7891 Loomis Property and 7905 Loomis Property were to be refinanced from a 5.75% to 3.375% on a 30-year fixed mortgage. When Plaintiff applied for a refinance in March and April 2021 through his lender of choice, US Bank,  US Bank obtained two written credit reports from the CRAs concerning Plaintiff's credit worthiness and standing as an individual. These reports were collected to be used for an extension of credit to Plaintiff for personal, family, or household purposes, as it was to be used to refinance these properties on which he received personal income through the payment of rent. Additionally, the credit reports were obtained for a permissible purpose as defined under 15 U.S.C. § 1681b because they were furnished to a person (US Bank) who intended to use the information in connection with a credit transaction involving the consumer on whom the information was to be furnished and involving the extension of credit to him, namely by providing a refinancing on his mortgages in his capacity as an individual. It was also a permissible purpose because US Bank had a legitimate business need for this information in connection with the business transaction initiated by Plaintiff as an individual when he requested US Bank refinance his mortgages. On the written credit reports US Bank obtained, Defendant was falsely reporting that Plaintiff was delinquent on his March 2021 "payment" on the Ave. J Property. Because of this false reporting by Defendant, Plaintiff was unable to refinance this mortgage at the 3.375% rate and ultimately was only able to refinance his MLK Blvd. Property and 7th St. Property at 4.875% after Defendant finally removed the derogatory reporting on or about June 2022. He has not been able to refinance his other properties at better rates to this day.

31.     Because Plaintiff was unable to refinance at the prevailing market rates he sought as set forth above, Plaintiff must pay increased interest rates on

these properties as set forth above and has suffered damages in excess of $450,000.00.

32. The inaccurate information negatively reflects upon the Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

33. Plaintiff has been damaged, and continues to be damaged, in the following ways:

    a. Emotional distress and mental anguish associated with having incorrect derogatory personal information transmitted about Plaintiff to other people both known and unknown; and

    b. Decreased credit score which has resulted in inability to obtain credit and refinance home loans; and

    c. Out of pocket expenses associated with disputing the information only to find the information to remain on the credit report.

34. Additionally, Plaintiff married his husband in 2020 and sought to add him onto the mortgage for their home at the Burnett Ave. Property. Because of Defendant's inaccurate and derogatory reporting as set forth above, Plaintiff was not able to refinance for a significant period of time and add his husband to the deed of the Burnett Ave. Property. This caused Plaintiff significant emotional distress because he was denied the ability to fully integrate the man he married into his life because of Defendant's false statements.

35. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant herein.

36. At all times pertinent hereto, the conduct of Defendant, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

37. Defendant knew that it should not have paid the property taxes on the Prospect Ave. Properties and Parkside Dr. Property out of the unrelated Ave. J

Property's escrow account. After it made this error, it intentionally tried to pressure Plaintiff to pay it back for its error by illegally assessing the charges against the Ave. J Property account. When Plaintiff refused to do so, Defendant intentionally made it as difficult as possible for Plaintiff to pay his mortgages and also reported inaccurate and derogatory information to the CRAs regarding Plaintiff's Ave. J Property payment history. Defendant knew that its reporting was inaccurate and false because it knew that Plaintiff had no obligation to pay for its error under the mortgage but did such reporting willfully and maliciously with the intent to cause Plaintiff significant harm so he would pay Defendant for its error. Defendant willfully reported the inaccurate information to the CRAs.

38. Defendant violated sections 1681n and 1681o of the FCRA by engaging in the following conduct that violates 15 U.S.C. §1681s-2(b):

    a. Willfully and negligently failing to reasonably reinvestigate and correct Defendant's credit reporting on Plaintiff's Account in response to Plaintiff's dispute of that information.

39. Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in causing the injuries, damages and harm to Plaintiff that are outlined more fully above, and as a result, Defendant is liable to compensate Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorneys' fees and costs, as well as such other relief permitted by law.

40. As a result of the above violations of the FCRA, CCRA, and common law, Plaintiff suffered and continues to suffer injury to Plaintiff's feelings, personal humiliation, embarrassment, mental anguish and emotional distress, and Defendant is liable to Plaintiff for Plaintiff's actual damages, statutory damages, punitive damages, and costs and attorney's fees.

**COUNT I: VIOLATION OF THE FAIR CREDIT REPORTING ACT**

41. Plaintiff reincorporates by reference all of the preceding paragraphs.

42. Plaintiff is a "consumer" as defined by 15 U.S.C. §1681a(c) because he is an individual.

43. The credit reports obtained by US Bank as set forth above and as reported on by Defendant were "consumer reports" as defined by 15 U.S.C. §1681a(d) because they were written communications of information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in for the purpose of serving as a fact in establishing the consumer's eligibility for (a) credit to be used primarily for personal, family, or household purposes or (c) any other purpose authorized under section 1681b of FCRA. To reiterate, a "consumer" is defined in FCRA as an individual as compared to a corporation or other entity.

44. The credit reports obtained by US Bank were obtained for a permissible purpose because they were used to extend credit to Plaintiff as an individual for his personal, family, or household purposes, including securing his personal income from his investments, were used to provide information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to the consumer as set forth in 15 U.S.C. §1681b(a)(3)(A), and were used for a legitimate business need by US Bank to evaluate Plaintiff's credit worthiness as an individual in connection with a business transaction initiated by the consumer as set forth in 15 U.S.C. §1681b(a)(3)(F)(i).

45. As the Ninth Circuit has made explicitly clear that "[i]f a consumer reporting agency provides a report based on a reasonable expectation that the report will be put to a use permissible under the FCRA, then that report is a "consumer report" under the FCRA and the ultimate use to which the report is actually put is irrelevant to the question of whether the FCRA governs the report's use and the user's conduct." *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1274 (9th Cir. 1990).

46. Thus, because the credit reports above were provided to US Bank for permissible purposes under the FCRA as set forth above, such reports are necessarily "consumer reports" as defined by FCRA.

47. 15 U.S.C. §1681s-2(b) required Defendant, after receipt of a dispute regarding the completeness or accuracy of information reported to a credit reporting agency, to conduct an investigation and correct any inaccurate information.

48. As set forth above, Plaintiff submitted disputes to the CRAs who forwarded those disputed to Defendant in July 2021. Defendant failed to conduct a reasonable reinvestigation because it validated and requested the CRAs continue reporting the inaccurate, derogatory information regarding the Ave. J Property as set forth above. In doing so, Defendant violated 15 U.S.C. §1681s-2(b).

49. Pursuant to 15 U.S.C. §1681n, Plaintiff is entitled to recover against Defendant actual damages, punitive damages, and attorney's fees and costs for Defendant's willful failure to comply with FCRA. In the alternative, pursuant to 15 U.S.C. §1681o, Plaintiff is entitled to recover against Defendant actual damages and attorney's fees and costs for Defendant's negligent non-compliance with the FCRA.

50. To the extent that Defendant's actions, counted above, violated the FCRA, those actions were done knowingly and willfully.

### COUNT II: VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

51. Plaintiff incorporates by reference all of the proceeding paragraphs.

52. Plaintiff is a "consumer" under Cal. Civ. C. § 1785.3(b) because he is a natural individual and not a corporation or other business entity.

53. Defendant is a "person" under Cal. Civ. C. § 1785.3(j) because it is a corporation or other entity.

54. The credit reports as described above are "consumer credit reports" under Cal. Civ. C. § 1785.3(c) because they were obtained by US Bank for a

permissible purpose because they were used to extend credit to Plaintiff as an individual for his personal, family, or household purposes, including securing his personal income from his investments, were used to provide information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to the consumer as set forth in Cal. Civ. C. § 1785.11, and were used for a legitimate business need by US Bank to evaluate Plaintiff's credit worthiness as an individual in connection with a business transaction initiated by the consumer as set forth in Cal. Civ. C. § 1785.11.

55. California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

56. The CRAs are each a "consumer credit reporting agency" under Cal. Civ. C. § 1785.3(d) because they are persons who engage in the business of evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties. The CRAs are in the business of aggregating credit information about consumers, including Plaintiff.

57. Pursuant to 15 U.S. Code § 1681t(b)(F)(ii), California Civil Code § 1785.25(a) is explicitly not preempted by FCRA.

58. Defendant negligently and willfully furnished information to the CRAs it knew or should have known was inaccurate, namely that Plaintiff was 120 days late in March 2021, 180 days late in June 2021, and 150 days late in July 2021 and as owing a balance of over $12,362 as of July 2021.

59. Based on these violations of Civil Code § 1785.25(a), Plaintiff is entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive

damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

## COUNT III: LIBEL

60. Plaintiff reincorporates by reference all of the preceding paragraphs.

61. Defendant made statements to the CRAs by stating that that Plaintiff was 120 days late in March 2021, 180 days late in June 2021, and 150 days late in July 2021 and as owing a balance of over $12,362 as of July 2021. Defendant repeated these statements in response to Plaintiff's dispute of the reporting in July 2021. The statements in the form of the information reported to the CRAs for use in credit reports were reasonably understood to be about Plaintiff.

62. Defendant made statements that Plaintiff was significantly delinquent on his mortgage and thus unworthy of credit and a deadbeat and exposed him to hatred, contempt, ridicule, and shame and discouraged others from associating and dealing with Plaintiff.

63. These statements were false, and Defendant failed to use reasonable care to determine the truth or falsity of the statements it published about Plaintiff.

64. Plaintiff suffered harm to his person and reputation, and the statements made by Defendant were a substantial factor in causing Plaintiff's harm.

65. Defendant knew, should have known, or should have had serious doubts about the truth of the statements it made about Plaintiff and acted with malice, oppression, or fraud in making them.

66. As set forth above, Defendant knew that its statements were false and made such statements with the intent to force Plaintiff to pay it moneys he did not lawfully owe it.

67. Plaintiff suffered severe emotional distress, harm to his reputation, and was unable to secure refinancing on his properties as a result of Defendant's conduct.

68. This claim is not preempted by 15 U.S. Code § 1681h(e) because it concerns false information that was furnished with malice or willful intent to injure Plaintiff as set forth above.

### COUNT IV: NEGLIGENCE

69. Plaintiff reincorporates by reference all of the preceding paragraphs.

70. Defendant owed Plaintiff a duty to use a reasonable standard of care in handling Plaintiff's mortgage on the Ave. J Property, including in only paying amounts out of the escrow account that were authorized, only charging Plaintiff for authorized charged, and only reporting credit information it knew to be accurate.

71. Defendant breached that duty by reporting credit information it knew to be inaccurate because of its mistake in paying unrelated property taxes out of the Ave. J escrow account. In doing so, Defendant ICC was negligent.

72. Plaintiff suffered harm as a result of Defendant's negligence. Plaintiff was deprived of money and has suffered embarrassment, shame, anxiety, and mental distress. In particular, Plaintiff was denied access to refinancing on his properties because of Defendant's negligent reporting of false information.

73. Defendant's negligence was a substantial factor in causing Plaintiff's harm.

74. As set forth above, Defendant's negligence was malicious or willful because it knew that its reporting was false and made such statements with the intent to force Plaintiff to pay it moneys he did not lawfully owe it.

75. This claim is not preempted by 15 U.S. Code § 1681h(e) because it concerns negligent acts that were committed with malice or willful intent to injure Plaintiff as set forth above.

### COUNT V: BREACH OF FIDCUIARY DUTY

76. Plaintiff reincorporates by reference all of the preceding paragraphs.

77. Defendant was in a fiduciary relationship with Plaintiff as the holder and servicer of his mortgage.

78.  Defendant acted on Plaintiff's behalf for purposes of properly processing payments into and out of his escrow account, including in specifically only collecting and paying amounts that were agreed and authorized by Plaintiff or the mortgage.

79.  Defendant failed to act as a reasonably careful fiduciary would have acted under the same or similar circumstances by improperly paying property taxes for unrelated properties out of the Ave. J Property escrow account and thereafter reporting inaccurate credit information about Plaintiff to the CRAs.

80.  Plaintiff suffered harm as a result of Defendant's actions. Plaintiff was deprived of money and has suffered embarrassment, shame, anxiety, and mental distress.  In particular, Plaintiff was denied access to refinancing on his properties because of Defendant's reporting of false information.

81.  Had Defendant not improperly paid money out of Plaintiff's escrow account in the first place or reported inaccurate information about Plaintiff's account afterwards, Plaintiff would not have suffered this damage.

82.  Defendant's conduct was a substantial factor in causing Plaintiff's harm.

83.  This claim is not preempted by 15 U.S. Code § 1681h(e) because it concerns negligent acts that were committed with malice or willful intent to injure Plaintiff as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

- A. Actual damages;
- B. Punitive damages as appropriate;
- C. Interest on damages as appropriate;
- D. Statutory damages for willful and negligent violations;
- E. Costs and reasonable attorney's fees; and,

   F. For such other and further relief as may be just and proper.

## **PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

84. Plaintiff, pursuant to his rights under Article 1, Section 16 of the Constitution of the State of California, reserves his right to and hereby demands a trial by jury on all issues so triable.

  Respectfully submitted this 27th day of October, 2022.

     By: /s/ Todd M. Friedman, Esq.
       Todd M. Friedman, Esq.
       Law Offices of Todd M. Friedman, P.C.
       Attorney for Plaintiff

Filed electronically on this 27th Day of October, 2022, with:

United States District Court CM/ECF system.

Notification sent electronically on this 27th Day of October, 2022, to:

Honorable Donna M. Ryu
United States District Court
Northern District of California

And All Counsel of Record as Recorded On The Electronic Service List

<u>/s/ Todd M. Friedman, Esq.</u>
TODD M. FRIEDMAN

SECOND AMENDED COMPLAINT