<div style="margin-left:auto; text-align:left;">United States District Court<br>Northern District of California</div>

1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   PAUL DORIAN,                              Case No. 22-cv-04372-DMR

8                    Plaintiff,               **ORDER ON MOTION TO DISMISS
                                              SECOND AMENDED COMPLAINT**
9          v.                                 **AND MOTION TO STRIKE**

10  COMMUNITY LOAN SERVICING, LLC,            Re: Dkt. Nos. 29, 30

11                   Defendant.

12          Defendant Community Loan Servicing, LLC fka Bayview Loan Servicing moves pursuant

13  to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Paul Dorian's second amended

14  complaint ("SAC") and moves pursuant to Rule 12(f) to strike his claim for punitive damages.

15  [Docket Nos. 29, 30.]  This matter is suitable for resolution without a hearing.  Civ. L.R. 7-1(b).

16  For the following reasons, the motion to dismiss is granted in part and denied in part.  The motion

17  to strike is denied.

18  **I.      BACKGROUND**

19          Dorian makes the following allegations in the SAC, all of which are taken as true for

20  purposes of the motion to dismiss.[1]  Dorian is a resident of San Francisco, California and is a

21  "consumer" within the meaning of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et

22  seq. and California Civil Code section 1785.3(b).  In January 2020, he began receiving letters from

23  Defendant informing him that he "owed over $34,000 on his escrow account" for property located

24  at 3640 Avenue J in Riviera Beach, Florida (the "Ave. J Property").  [Docket No. 28 (SAC) ¶¶ 2,

25  4.]  He contacted Defendant and learned that the $34,000 was for property taxes that Defendant

26

27  [1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
    of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
28  (per curiam) (citation omitted).

had paid on two of Dorian's properties located in San Francisco and Tracy, California.  Dorian

alleges that "the Ave. J Property has no connection" to the San Francisco and Tracy properties and

therefore "Defendant should never have paid the property taxes for these properties" out of his

escrow account.  *Id*. at ¶¶ 5, 6.  Accordingly, Dorian refused to pay $34,000 to Defendant because

Defendant "should not have paid the property taxes" for the San Francisco and Tracy properties

from the escrow account.  He further alleges that the mortgage for the Ave. J Property "does not

provide that Defendant may pay property taxes for other properties out of the Ave. J Property

escrow account."  *Id*. at ¶ 7.

Dorian alleges that as a result of his refusal to pay, Defendant removed Dorian's ability to

make online or automatic payments on other loans.  The only way Dorian could make payments

on his loans was by calling Defendant to schedule a meeting with an individual employee via an

automated system, then calling back at the scheduled time to process the payment over the phone.

In many instances, Defendant's employees do not join the scheduled meeting at the appointed

time.  As a result, Dorian "has been unable to timely make payments for some of his loans because

Defendant refused to accept or make it possible to pay."  *Id*. at ¶¶ 8-11.

In March 2021, Defendant began reporting on Dorian's credit report that he was 120 days

late on payment for his loan on the Ave. J Property.  Defendant reported Dorian as late on

payments in June and July 2021 and that he owed a balance of over $12,000 as of July 2021.

Dorian alleges that these reports are inaccurate because he made timely payments on his

obligations on the mortgage for the Ave. J Property.  He further alleges that "the amounts sought

by Defendant were unilaterally imposed by Defendant based on its negligent misapplication of

escrow taxes to unrelated properties."  *Id*. at ¶¶ 12, 13.

Dorian alleges that Defendant furnished inaccurate and false information to all three credit

reporting agencies ("CRAs") related to his account and payment status for the Ave. J Property for

at least March 2021, June 2021, and July 2021, which has had "a significant negative effect" on

his credit score.  *Id*. at ¶ 14.  He alleges that he owns the Ave. J Property "in his own name and as

an individual, not as a corporation or other entity," so the reporting impacted his individual and

personal credit report.  *Id*. at ¶ 15.  Dorian "sent Defendant a letter requesting a removal of the

2

1    reporting," but "Defendant did not correct the wrong reporting on his Account until after this

2    lawsuit was filed."  *Id*. at ¶ 16.  Dorian submitted a written dispute to all three CRAs in July 2021

3    disputing the validity of Defendant's reporting.  After receiving the disputes from the CRAs,

4    Defendant responded "by verifying the inaccurate reporting as accurate," causing it to remain on

5    Dorian's credit report until June 2022.  *Id*. at ¶¶ 17, 28.

6        Dorian alleges that "Defendant failed to conduct a reasonable reinvestigation into the

7    reporting because Defendant knew that its reporting was inaccurate and would have been able to

8    confirm that its reporting was inaccurate had it consulted its account records and the disputes sent

9    by [Dorian]."  He further alleges that Defendant "failed to correct the erroneous reporting in a

10   timely manner," and instead continued to report "incorrect derogatory information" about Dorian

11   to the CRAs.  *Id*. at ¶ 18.  As a result of Defendant's inaccurate reporting, Dorian's credit score

12   decreased.  He alleges that he "has been denied loans" due to the reporting.  *Id*. at ¶ 20.

13       Dorian further alleges that during the relevant time period he owned eight properties "in

14   his own name and as an individual, not a corporation or other entity."  These include five

15   properties in Florida which he rents to tenants; Dorian alleges that he "collects rent from those

16   tenants to support his personal income."  He alleges that "[t]hese five properties [in Florida] are

17   held as personal investments, similar to a stock portfolio or other investment account, on which

18   [Dorian] collects personal income."  *Id*. at ¶ 21, 22.  They also include three properties in

19   California: one in San Francisco, in which Dorian and his husband reside as their "primary

20   residence" (the "Burnett Ave. Property"); the property in Tracy, in which his in-laws reside as his

21   tenants and pay rent to him (the "Parkside Dr. Property"); and a third property in San Francisco

22   that he rented to tenants who paid rent "to support [Dorian's] personal income" (the "Prospect

23   Ave. Property").  Dorian sold the Prospect Ave. Property in 2022 and now owns seven properties

24   in Florida and California "in his own name and as an individual."  *Id*. at ¶¶ 21, 23-26.

25       Dorian alleges that at the time of Defendant's inaccurate reporting, he was attempting to

26   refinance loans for his eight properties, and that he "was unable to refinance these properties at the

27   prevailing market rates which he would have been able to had Defendant not inaccurately reported

28   [his] accounts."  *Id*. at ¶ 27.  However, the SAC includes allegations about the attempted

United States District Court
Northern District of California

3

refinancing for only seven of Dorian's eight properties; it does not include allegations about the attempted refinancing of the mortgage on Prospect Ave. Property that he sold in 2022. *See id.* at ¶¶ 28-30.

First, Dorian alleges that he was unable to refinance the mortgage on his primary residence in San Francisco (the Burnett Ave. Property) from a 3.75% interest rate to a 2.750% rate after his lender, US Bank, obtained a written credit report "to be used for an extension of credit to [him] for personal, family, or household purposes, as it was to be used to refinance his primary residence." As a result of Defendant's reporting that Dorian was delinquent on three payments for the Ave. J Property, Dorian could not obtain the 2.750% rate and instead refinanced it at a 3.5% rate "after Defendant finally removed the derogatory reporting on or about June 2022." *Id.* at ¶ 28.

Dorian attempted to refinance the mortgage for the residence in which his in-laws reside (the Parkside Dr. Property) from a 4.25% rate to a 3.375% rate.  US Bank obtained two written credit reports regarding Dorian that were "to be used for an extension of credit to [him] for personal, family, or household purposes, as they were to be used to refinance the residence his in-laws resided at."  Given the false reporting that Dorian was delinquent on one payment for the Ave. J Property, Dorian was unable to refinance the mortgage at any better rate, including after Defendant removed the derogatory reporting in June 2022. *Id.* at ¶ 29.

Finally, Dorian alleges that he attempted to refinance the loans for all five properties in Florida.  US Bank obtained two written credit reports regarding Dorian that were "to be used for an extension of credit to [him] for personal, family, or household purposes, as it was to be used to refinance these properties on which he received personal income through the payment of rent." The reports contained Defendant's false reporting that Dorian was delinquent on one payment for the Ave. J Property.  As a result of this reporting, Dorian alleges that he was able to refinance only two of the five properties after Defendant removed the derogatory reporting in June 2022 and did not obtain the favorable rates he sought.  He also alleges that he was unable to refinance the three other properties at better rates. *Id.* at ¶ 30.

Dorian alleges that because he was unable to refinance the loans for his properties at the prevailing market rates he sought, he is paying higher interest rates and has suffered damages of

1    over $450,000.  *Id.* at ¶ 31.

2         Dorian filed the complaint against Defendant in San Francisco Superior Court on June 8,

3    2022.  Defendant removed the action to this court on July 28, 2022.  [Docket No. 1.]  Dorian filed

4    the first amended complaint ("FAC") on August 17, 2022.  On October 13, 2022, the court granted

5    Defendant's motion to dismiss with leave to amend and instructed Dorian to "plead his best case."

6    *Dorian v. Cmty. Loan Servicing, LLC*, No. 22-CV-04372-DMR, 2022 WL 7620460, at *7 (N.D.

7    Cal. Oct. 13, 2022).  Dorian timely filed the SAC, alleging the following claims: 1) violation of

8    the FCRA, 15 U.S.C. § 1681s-2(b); 2) violation of the California Consumer Credit Reporting

9    Agencies Act ("CCCRA"), California Civil Code section 1785.25; 3) libel; 4) negligence; and 5)

10   breach of fiduciary duty.

11        Defendant now moves to dismiss the SAC and to strike the claim for punitive damages.

12   **II.    MOTION TO DISMISS**

13        **A.    Legal Standard**

14        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

15   the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

16   When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all

17   of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (2007) (citation

18   omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an

19   absence of "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New*

20   *Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556

21   U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks

22   omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the

23   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

24   *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate

25   "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

26   will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478

27   U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on

28   other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

United States District Court
Northern District of California

1    As a general rule, a court may not consider "any material beyond the pleadings" when

2    ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).

3    However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack*

4    *v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents

5    whose contents are alleged in a complaint and whose authenticity no party questions, but which

6    are not physically attached to the pleading," without converting a motion to dismiss under Rule

7    12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

8    1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept

9    as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr*.

10   *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

11   **B.    Request for Judicial Notice[2]**

12   Defendant asks the court to take judicial notice of five documents.  [Docket No. 29-2

13   (Request for Judicial Notice, "RJN") Exs. 1-5.]  Three of the five documents are the FAC, SAC,

14   and the October 13, 2022 Order on the Motion to Dismiss.  These filings are part of the court's

15   docket and are already part of the record in this case, and the court previously denied a similar

16   request to judicially notice materials on the court's docket.  *See Dorian*, 2022 WL 7620460, at *3.

17   The request is denied as to Exhibits 2, 3, and 4.

18   Exhibit 1 is a mortgage recorded on October 29, 2018 as instrument no. 20180383194 in

19   Palm Beach County, Florida in connection with the Ave. J Property.  This document is judicially

20   noticeable because it is a matter of public record and is a true and correct copy of an official public

21   record.  Its authenticity is capable of accurate and ready determination by resort to sources whose

22   accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b).  Dorian objects to

23   Defendant's "inject[ion of] property records without context" but does not otherwise set forth the

24   basis for his objection.  *See* Opp'n 13 n.7.  The objection is overruled.  The court takes judicial

25

---

26   [2] Defendant also submitted a declaration by counsel in support of the motion to dismiss.  [Docket
     No. 29-3 (Thomas Decl. Nov. 10, 2022).]  It offers no authority that the court may consider this
27   evidence in connection with this motion.  *See Lee*, 250 F.3d at 688 ("when the legal sufficiency of
     a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the
28   complaint." (cleaned up)).

United States District Court
Northern District of California

1    notice of Exhibit 1.

2        Exhibit 5 is a Trust Transfer Deed recorded on November 17, 2015 as document number

3    2015136647 in San Joaquin County, California.  It appears to show that real property in Tracy was

4    transferred from Dorian to "Paul J. Dorian, Trustee of the Paul J. Dorian Trust" in 2015.  The

5    document does not expressly identify the address of the property at issue, although it appears that

6    it may be related to the Parkside Dr. Property.  *See* RJN Ex. 5.  Accordingly, Defendant has not

7    established its relevance to the SAC or the issues in the motion to dismiss.  The request is denied

8    as to Exhibit 5.

9        **C.    Discussion**

10       As an initial matter, Dorian does not oppose the motion to dismiss his claim for breach of

11   fiduciary duty.  Opp'n 2 n.1.  Accordingly, that claim is dismissed with prejudice.

12           **1.    FCRA Claim**

13       Dorian's first claim is for violation of the FCRA, 15 U.S.C. § 1681s-2(b).  Congress

14   enacted the FCRA in 1970 to regulate credit reporting agencies ("CRAs") and furnishers of

15   information to CRAs in order to ensure fair and accurate credit reporting regarding consumers.

16   *See* 15 U.S.C. § 1681.  Section 1681s-2(a) of the FCRA outlines the duties of furnishers of

17   consumer information to maintain and report accurate information and notice of disputes.  15

18   U.S.C. § 1681s-2(a)(1)-(3).

19       The relevant provision of the FCRA, 15 U.S.C. § 1681s-2(b), imposes four duties on

20   furnishers once they have received notice of a dispute from a CRA: (1) conduct an investigation,

21   (2) review all relevant information received from CRA, (3) report any inaccuracies found, (4)

22   modify or delete any incorrect information. 15 U.S.C. § 1681s-2(b)(1)(A)-(E).  This subsection is

23   privately enforceable but the duties within it are "triggered only after the consumer notifies the

24   CRA, and the CRA then notifies the furnisher of credit."  *Nelson v. Equifax Info. Servs.,* LLC, 522

25   F. Supp. 2d 1222, 1231 (C.D. Cal. 2007) (citing *Nelson v. Chase Manhattan Mortgage Corp.*, 282

26   F.3d 1057, 1060 (9th Cir. 2002)).  "[N]otice of a dispute received directly from the consumer does

27   not trigger furnishers' duties under [§ 1681s-2(b)]."  *Gorman v. Wolpoff & Abramson, LLP*, 584

28   F.3d 1147, 1154 (9th Cir. 2009).  Assuming a CRA does notify the furnisher of a dispute, a

United States District Court
Northern District of California

1    "plaintiff filing suit under section 1681i must make a 'prima facie showing'" that the report in

2    dispute was inaccurate.  *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir.

3    2010) (citing *Dennis v. BEH-1, LLC*, 520 F3d 1066, 1069 (9th Cir. 2008)).  Then the plaintiff must

4    show that the defendant's investigation procedures were not reasonable.  *See Gorman*, 584 F.3d at

5    1157.  The FCRA provides for civil liability for willful and negligent noncompliance.  15 U.S.C.

6    §§ 1681n, 1681o.

7         The FAC alleges that Defendant "failed to conduct a reasonable reinvestigation" of the

8    information it furnished to CRAs, resulting in inaccurate information being included in Dorian's

9    credit report.  SAC ¶¶ 18, 48.  Dorian alleges that as a result, his credit score decreased and he was

10   denied the opportunity to refinance seven of his eight properties at favorable rates, leading to

11   damages of over $450,000.00, emotional distress, and out-of-pocket expenses.  *Id.* at ¶¶ 20, 27-31,

12   33, 34.  He alleges the violation was malicious, willful, and negligent.  *Id.* at ¶ 36.

13        Defendant first moves to dismiss the FCRA claim because the credit reports obtained by

14   Dorian's lender in connection with his attempts to refinance the loans on his rental properties were

15   not "consumer reports" under the FCRA since they were used to obtain credit for business

16   purposes.  Therefore, it argues, Dorian has not stated a claim under the FCRA as to those

17   properties.  Mot. 14-16.  Defendant specifically challenges the FCRA claim as to all of Dorian's

18   rental properties, including the Parkside Property in which his in-laws reside as tenants.

19   Defendant does not include Dorian's primary residence (the Burnett Ave. Property) in this

20   challenge.  *See id.* at 14, n.1; SAC ¶ 24.

21        "While the FCRA expressly provides for 'actual damages' for a negligent or willful

22   violation, [15 U.S.C.] §§ 1681n and 1681o also expressly provide that a violator is liable 'to that

23   consumer.'"  *Boydstun v. U.S. Bank*, 726 F. App'x 601 (9th Cir. 2018) (quoting *Johnson v. Wells*

24   *Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1122 (D. Nev. 2008)).  In other words, a plaintiff

25   seeking damages for an FCRA violation must show that the defendant's violation "resulted in

26   damages to [the] [p]laintiff *as a consumer*."  *Id.* (emphasis in original) (quoting *Johnson*, 558 F.

27   Supp. 2d at 1122).  The FCRA defines "consumer" to mean "an individual," 15 U.S.C. § 1681a(c),

28   and defines "consumer report" to mean

United States District Court
Northern District of California

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for--
>
> **(A)** credit or insurance to be used primarily for *personal, family, or household purposes*;
>
> **(B)** employment purposes; or
>
> **(C)** any other purpose authorized under section 1681b of this title.

15 U.S.C.A. § 1681a(d)(1) (emphasis added).

Courts that have considered the question have concluded that the FCRA does not apply where a consumer report is used to obtain credit for business purposes, as opposed to personal purposes. *See Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1081-83 (C.D. Cal. 2014) (collecting cases; granting summary judgment on FCRA claim where plaintiff's "claimed damages flow[ed] from [the plaintiff's] inability to supply credit to [his] real estate investment business"); *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (holding that "[r]eports used for 'business, commercial, or professional purposes' [were] not within the purview of" an earlier version of the FCRA). Further, numerous courts have found that debts incurred in connection with rental properties may not form the basis of claims under the Fair Debt Collection Practices Act ("FDCPA"), which uses a definition of "debt" that is similar to the definition of "consumer report" in the FCRA. *See* 15 U.S.C. § 1692a(5) (defining "debt" to mean "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*" (emphasis added)). These cases hold that debts related to rental properties in which the borrower does not reside are not debts "primarily for personal, family, or household purposes." *See, e.g., Aniel v. TD Serv. Co.*, No. C 10-05323 WHA, 2011 WL 109550, at *4 (N.D. Cal. Jan. 13, 2011) (dismissing FDCPA claim for unfair debt collection practices based on foreclosure of plaintiffs' rental property; holding that mortgage loan on property rented to third parties "is not a 'debt' covered by the FDCPA because the money and property involved

1  were not used 'primarily for personal, family, or household purposes'"); *Aniel v. Litton Loan*

2  *Servicing, LP*, No. C 10-00951 SBA, 2011 WL 635258, at *4 (N.D. Cal. Feb. 11, 2011)

3  (dismissing FDCPA claim, holding "[s]ince the debt at issue was incurred in connection with a

4  rental property, as opposed to a personal, family or household purpose, the FDCPA has no

5  application here."); *Sayeed v. Cheatham Farms Master Homeowners' Ass'n*, No. CV 18-2073 PA

6  (SKX), 2018 WL 4297480, at *2-3 (C.D. Cal. Sept. 7, 2018) (dismissing FDCPA claim based on

7  debt for delinquent homeowners' association dues related to rental property); *Connelly v. Ekimoto*

8  *& Morris, LLLC*, No. CV 16-00448 LEK-KSC, 2018 WL 3312957, at *3 (D. Haw. July 5, 2018)

9  (same).

10        Dorian does not attempt to distinguish these cases on any ground other than that they

11  involve the FDCPA instead of the FCRA.  *See* Opp'n 10.  He contends that he and his family

12  (which includes his in-laws) reside in the Burnett Ave. and Parkside Dr. Properties, and that he

13  owns the remaining properties "as investment properties and on which he received personal

14  income though the payment of rent."  Opp'n 12.  According to Dorian, *Dennis v. BEH-1, LLC*,

15  520 F.3d 1066, 1069 (9th Cir. 2008), stands for the proposition that "a 'consumer' suffers actual

16  damages under FCRA when they suffer it in their individual capacity."  Opp'n 12.  *Dennis* does

17  not support Dorian's position.  In *Dennis*, a CRA prepared a credit report on the plaintiff that

18  included inaccurate information about a civil judgment entered against the plaintiff.  520 F.3d at

19  1068-69.  The plaintiff brought an FCRA claim for damages, testifying that "he hoped to start a

20  business and that he diligently paid his bills on time for years so that he would have a clean credit

21  history when he sought financing for the venture," and that "[t]he only blemish on his credit report

22  in April 2003 was the erroneously reported judgment."  *Id.* at 1069.  The plaintiff asserted that

23  "that was enough to cause several lenders to decline his applications for credit, dashing his hopes

24  of starting a new business."  *Id.*  The Ninth Circuit reversed summary judgment on the claim in

25  part on the ground that the plaintiff had shown that the credit report was inaccurate, and he had

26  "offered credible evidence of actual damages."  *Id.*  Unlike Dorian, the plaintiff in *Dennis* was not

27  seeking *business damages*; he sued for losses he sustained as a consumer, including "actual

28  damages including emotional distress, an invasion of his privacy, humiliation, embarrassment,

United States District Court
Northern District of California

10

pain and suffering, damages to his credit rating, his ability to obtain credit, and his ability to obtain credit at an interest rate or at . . . terms he would have been able to obtain had defendants not [violated the FCRA]."  *See Grigoryan*, 84 F. Supp. 3d at 1082-83 (discussing *Dennis*).  In contrast, Dorian expressly seeks damages related to his attempts to refinance the loans on his rental properties.

Ultimately, Dorian's position is that because he received rental income on his rental properties as "personal income," the credit reports used to obtain refinancing of the loans on those properties qualify as "consumer reports" under the FCRA.  He offers no authority to support this position, and there is ample authority to the contrary.  *See, e.g., Grigoryan*, 84 F. Supp. 3d at 1082-86 (granting summary judgment on FCRA claim based on the use of a credit report for the plaintiff's real estate investment business, a business purpose); *Natale v. TRW, Inc.*, No. C 97-3661 CRB, 1999 WL 179678, at *4 (N.D. Cal. Mar. 30, 1999) (holding that "the FCRA does not apply to transactions related primarily to businesses operated by the consumer," regardless of the "form of ownership [of the business]").  The court concludes that Dorian is precluded from bringing FCRA claims based on credit reports connected to the five rental Florida properties and the Prospect Ave. Property in San Francisco, as such credit reports were not used to determine his eligibility for credit "to be used primarily for personal, family, or household purposes."  The FCRA claims based on the Florida properties and the Prospect Ave. Property are dismissed with prejudice.

The court reaches a different conclusion as to the Parkside Dr. Property, at least at this stage of the case.  Dorian argues that credit reports related to the refinancing of the Parkside Dr. Property were related to a "family" purpose because his in-laws reside in that property.  *See* Opp'n 14-15.  Defendant does not respond to this argument on reply.  Defendant thus concedes the argument at the pleading stage.  Accordingly, the motion to dismiss the FCRA claim based on the credit reports connected to the Parkside Dr. Property on the ground that they were not "consumer reports" under the FCRA is denied.

Next, Defendant argues that the SAC's "pleading of [Dorian's] actual damages is so uncertain as to fail to state a claim showing" he is entitled to relief under the FCRA, as required by

11

United States District Court
Northern District of California

1   Rule 8.  Mot. 17-18.  Defendant's argument appears to be that Dorian must plead his actual

2   damages under the FCRA with certainty, but it cites no supporting authority.  The SAC alleges

3   that as a result of Defendant's inaccurate reporting, Dorian incurred damages in the form of

4   increased interest rates, emotional distress, and out of pocket expenses.  *See* SAC ¶¶ 31-34.

5   Defendant does not explain why this is insufficient.  The motion to dismiss the FCRA claim on

6   this basis is denied.

7       Finally, Defendant argues that Dorian "lacks standing to bring a claim under the FCRA

8   based on his ownership of the Parkside Property."  Mot. 19.  Defendant notes the SAC's allegation

9   that Dorian owns all of the properties identified in the SAC "in his own name and as an individual,

10  not as a corporation or other entity."  *See* SAC ¶ 21.  It contends that this is false, and that Dorian

11  "transferred the Parkside Property to the Paul J. Dorian Trust on or about November 7, 2015,"

12  citing Exhibit 5 to the RJN.  Mot. 19.  Accordingly, it argues that Dorian "cannot claim injury in

13  fact to himself as a consumer based upon any effects upon the Parkside Property" because he did

14  not own it in his individual capacity at the relevant time.  *Id.*  As discussed above in connection

15  with the RJN, Exhibit 5 does not expressly identify the address of the property at issue.  Therefore,

16  Exhibit 5 does not establish the ownership of the Parkside Property or any other property at issue

17  in the SAC.  The motion to dismiss the FCRA claim as to the Parkside Property on this basis is

18  denied.

19              **2.    CCRAA**

20      Dorian's second claim is for violation of California Civil Code section 1785.25(a), which

21  prohibits a person from "furnish[ing] information on a specific transaction or experience to any

22  consumer credit reporting agency if the person knows or should know the information is

23  incomplete or inaccurate."

24      As with the FCRA, damages are available to "[a]ny *consumer* who suffers damages as a

25  result of a violation" of the CCCRAA.  *See* Cal. Civ. Code § 1785.31(a) (emphasis added).

26  "[B]ecause the CCRAA is substantially based on the Federal Fair Credit Reporting Act, judicial

27  interpretation of the federal provisions is persuasive authority and entitled to substantial weight

28  when interpreting the California provisions."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d

1    876, 889 (9th Cir. 2010) (citation and quotation marks omitted).

2          Defendant moves to dismiss this claim on the same ground as the FCRA claim; namely,

3    that the credit reports for Dorian's rental properties were not "consumer reports" under the

4    CCRAA.  Mot. 18-19.  Dorian agrees that the CCRAA claim "rises and falls with" the FCRA

5    claim.  Opp'n 2, 17.  *See Grigoryan*, 84 F. Supp. 3d at 1081 ("the FCRA and CCRAA do not

6    apply where a consumer report is used for business purposes.").  For the reasons discussed above,

7    Dorian has not stated FCRA claims based on credit reports connected to the five Florida properties

8    and the Prospect Ave. Property in San Francisco, and by extension, the CCRAA.  The CCRAA

9    claims based on the Florida properties and the Prospect Ave. Property are dismissed with

10   prejudice.

11         Defendant also moves to dismiss the CCRAA claim on the ground that federal and Florida

12   law govern Dorian's claims.  It argues as follows: Dorian's claim under the CCRAA is based upon

13   Defendant's "servicing of the Avenue J. Property and its associated loan agreement," because

14   Defendant's allegedly inaccurate reports were based upon the loan for the Ave. J. Property.  Mot.

15   20; *see* SAC ¶¶ 12, 13.  RJN Exhibit 1 is the mortgage recorded for the Ave. J Property.  It

16   contains the following provision about the "governing law":

17          This Security Instrument shall be governed by federal law and the law
            of the jurisdiction in which the Property is located.  All rights and
18          obligations contained in this Security Instrument are subject to any
            requirements and limitations of Applicable Law . . .
19

20   RJN Ex. 1 at ¶ 16.  According to Defendant, Dorian's "claims under the CCRAA directly relate to

21   [Defendant's] alleged compliance, or lack thereof, with rights and obligations set forth by the laws

22   of the state of California," but California law does not "dictate the rights and obligations set forth

23   under the agreement."  Therefore, it argues, the CCRAA claim must be dismissed.  Mot. 20.

24   Defendant does not cite authority for its argument nor does it explain how Defendant's reporting

25   to the CRAs falls under the scope of the "Security Instrument" for the Ave. J Property.  The

26   motion to dismiss the CCRAA claim on this basis is denied.

27              **3.    Libel and Negligence Claims**

28         Defendant argues that Dorian's libel and negligence claims are preempted by 15 U.S.C. §

United States District Court
Northern District of California

13

1681t(b)(1)(F), and in the alternative, that the SAC fails to state claims for libel and negligence.

The FCRA contains two preemption provisions restricting state law claims that apply to furnishers of information.  The first preemption provision, 15 U.S.C. § 1681h(e), states:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).  "By its plain terms, Section 1681h(e) only preempts state claims for defamation, invasion of privacy and negligence and only to the extent such claims are based on the disclosure of certain types of information and are not based on malice or willful intent to injure." *Subhani v. JPMorgan Chase Bank, Nat. Ass'n*, No. C 12-01857 WHA, 2012 WL 1980416, at *3 (N.D. Cal. June 1, 2012) (quotation marks and citation omitted).

Congress amended the FCRA in 1996 to add another preemption provision, 15 U.S.C. § 1681t(b)(1)(F).  It provides in relevant part that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . ."[1]  15 U.S.C. § 1681t(b)(1)(F).

Here, Dorian pleads malice and/or willful intent to injure with respect to his libel and negligence claims.  *See* SAC ¶¶ 36, 68, 75.

There is an apparent tension between sections 1681t(b)(1)(F) and 1681h(e) and the Ninth Circuit has not squarely addressed the issue.  *See Gorman*, 584 F.3d at 1165-67; *Subhani*, 2012 WL 1980416, at *3-6.  The tension between the two provisions arises "because a majority of district courts interpret section 1681t(b)(1)(F) as expressly preempting all state common law and statutory claims against furnishers of information, while section 1681h(e) suggests certain state claims might not be preempted if the plaintiff pleads malice or willful intent to injure." *Miller v. Bank of America, N.A.*, 858 F. Supp. 2d 1118, 1126 (S.D. Cal. 2012) (citing *Gorman*, 584 F.3d at

---

[1] This preemption provision excepts only one statute relevant here, California Civil Code section 1785.25(a) (the CCRAA).  *See* 15 U.S.C. § 1681t(b)(1)(F)(ii).

14

1165); *see also Davis v. Md. Bank*, No. 00-04191 SBA, 2002 WL 32713429, at *12 (N.D. Cal. June 19, 2002) (finding a majority of district courts have held that the FCRA preempts state statutory and common law causes of action).

In *El-Aheidab v. Citibank (South Dakota), N.A.*, No. C-11-5359 EMC, 2012 WL 506473, at *7-9 (N.D. Cal. Feb. 15, 2012), the court considered how to reconcile the two provisions and concluded that section 1681t(b)(1)(F) completely preempts all state law causes of action, despite the exceptions noted in section 1681h(e). The court held that "a plaintiff cannot sustain a state common law or statutory claim related to the duties set forth in section 1681s-2, even if a plaintiff alleges a defendant reported false information with malice or willful intent to injure." *Miller*, 858 F. Supp. 2d at 1126 (citing *El-Aheidab*, 2012 WL 506473, at 8-9). This total preemption approach continues to be the majority view in the Ninth Circuit. *See, e.g., Finley v. Cap. One*, No. 16-CV-01392-YGR, 2017 WL 1365207, at *4 (N.D. Cal. Apr. 14, 2017); *White v. Navy Fed. Credit Union*, No. 18CV00402-WQH-BGS, 2018 WL 3729510, at *4 (S.D. Cal. Aug. 3, 2018).

The court finds the rationale in *El-Aheidab* persuasive. Dorian's common law tort claims for libel and negligence are preempted by section 1681t(b)(1)(F). The claim that forms the core of the SAC is that Defendant reported inaccurate information to CRAs and failed to remedy Dorian's request for corrections. Dorian's allegations put his libel and negligence claims within the purview of section 1681s-2 because they clearly involve duties and responsibilities required of furnishers of credit information. *See, e.g.*, 15 U.S.C. § 1681s-2(a) (furnishers must accurately report credit information). Because the wrongful conduct is regulated under section 1681s-2, section 1681t(b)(1)(F) applies to preempt the libel and negligence claims despite the allegations that Defendant acted with malice and/or the willful intent to injure. *See Buraye v. Equifax*, 625 F. Supp. 2d 894, 900 (C.D. Cal. 2008) (holding that the plain language of "section 1681t(b)(1)(F) clearly eliminated all state cause of action against furnishers of information") (quoting *Davis*, 2002 WL 32713429, at *13); *Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005) ("On its face, the FCRA precludes all state statutory or common law causes of action that would impose any requirement or prohibition on the furnishers of credit information."). Accordingly, because these claims are preempted, amendment would be futile and the libel and negligence

United States District Court
Northern District of California

1    claims are dismissed with prejudice.

2    **III.    MOTION TO STRIKE**

3        **A.  Legal Standard**

4        "The court may strike from a pleading an insufficient defense or any redundant,

5    immaterial, impertinent, or scandalous matter."  Fed. R. Civ. Proc. 12(f).  "[T]he function of a

6    12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating

7    spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*,

8    697 F.2d 880, 885 (9th Cir. 1983).  "'Immaterial' matter is that which has no essential or

9    important relationship to the claim for relief or the defenses being pleaded."  *Fantasy, Inc. v.*

10   *Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)

11   (quotation omitted).  "'Impertinent' matter consists of statements that do not pertain, and are not

12   necessary, to the issues in question."  *Id.*

13       "Motions to strike are generally regarded with disfavor because of the limited importance

14   of pleading in federal practice, and because they are often used as a delaying tactic."  *California*

15   *Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)

16   (citing cases).  "In reviewing a motion to strike, the court must view the pleadings under attack in

17   the light most favorable to the pleader."  *Steines v. Crown Media United States, LLC*, No.

18   CV1809293CJCFFMX, 2018 WL 6330600, at *8 (C.D. Cal. Dec. 4, 2018).  "If there is any doubt

19   whether the portion to be stricken might bear on an issue in the litigation, the court should deny

20   the motion."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

21       **B.    Discussion**

22       Defendant moves to strike Dorian's claims for punitive damages under 15 U.S.C. § 1681n

23   and California Civil Code section 1785.31 and "all references to punitive damages" in the SAC on

24   the ground that Dorian alleges only conclusory allegations supporting his entitlement to such

25   damages.  Mot. 3-4.  Defendant's motion to strike is improper.  In *Whittlestone, Inc. v. Handi-*

26   *Craft Co.*, 618 F.3d 970 (9th Cir. 2010), the Ninth Circuit reviewed a district court's decision to

27   strike a claim for damages where the lower court had found that the specific damages at issue were

28   precluded as a matter of law.  The Ninth Circuit reviewed the five categories of material that may

United States District Court
Northern District of California

1   be stricken from a complaint pursuant to a Rule 12(f) motion and determined that none of them

2   applied to a request for damages.  618 F.3d at 973-74.  Specifically, *Whittlestone* held that a

3   request for damages is neither immaterial nor impertinent to the underlying claim for relief: "the

4   claim for damages is not immaterial, because whether these damages are recoverable relates

5   directly to the plaintiff's underlying claim for relief," and "the claim for damages is not

6   impertinent, because whether these damages are recoverable pertains directly to the harm being

7   alleged."  *Id.* at 974.  The court held that Rule 12(f) should not be used "as a means to dismiss

8   some or all of a pleading . . . because a Rule 12(b)(6) motion (or a motion for summary judgment

9   at a later stage in the proceedings) already serves such a purpose."  *Id.*

10       *Whittlestone* applies here.  To the extent Defendant challenges the request for punitive

11   damages in the SAC, Ninth Circuit law dictates that it must do so through Rule 12(b)(6), not Rule

12   12(f).  Defendant should have made the argument with supporting authority as part of its motion to

13   dismiss, not as a motion to strike.  *See Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 896

14   (N.D. Cal. 2011) ("A Rule 12(f) motion is not a proper method to procure dismissal of all or part

15   of a complaint or counterclaim." (citation omitted)).  Defendant's Rule 12(f) motion is an "attempt

16   to have certain portions of [the SAC] dismissed," an action "better suited for a Rule 12(b)(6)

17   motion . . . not a Rule 12(f) motion."  *See Whittlestone*, 618 F.3d at 974.

18       Accordingly, Defendants' motion to strike Dorian's claim for punitive damages and

19   "references" thereto is denied.

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28

United States District Court
Northern District of California

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in part.  Dorian's breach of fiduciary duty, libel, and negligence claims are dismissed with prejudice. Dorian's FCRA and CCRAA claims based on the Florida properties and the Prospect Ave. Property are dismissed with prejudice.  The remaining claims are for violations of the FCRA and CCRAA based on the Burnett Ave. and Parkside Dr. Properties.

Defendant's motion to strike is denied.

**IT IS SO ORDERED.**

Dated: January 25, 2023



Donna M. Ryu
United States Magistrate Judge